This is our first case of the afternoon. People of the State of Illinois v. Matthew Hughes, for the appellant Ms. Goldman, for the appellant Mr. Majors, you may proceed. Thank you, your honors. May it please the court, counsel. My name is Barbara Goldman. I represent the defendant Matthew Hughes in the appeal of the August 31, 2010 order establishing his theme date or theme period of commitment as October 13, 2012. There are two issues to be addressed at the court today. First, whether this court has jurisdiction to hear this appeal. And second, whether the trial court failed to provide Mr. Hughes with proper credit for his period of custody and therefore improperly calculated his theme period date, which is the maximum period of involuntary commitment. Just a couple of brief facts on this. On October 15, 2006, Mr. Hughes was charged, had a two-year release date for the charge of retail theft, and that's how he got to Pontiac. He has a history of mental illness. He was taking his psychotropic medication there. The psychiatrist withdrew the medication. During that period when he didn't have the medication, he threw an object at the prison guard and then they put him back on. He was charged with assault at aggravated battery in January of 2008. In February of the next year, which was the date of the trial, they found him not guilty of reasonable insanity of one count of aggravated battery. And in April of 2009, he was transferred to DHS. DOC transferred him from Department of Corrections to Department of Human Services in Chester. So there's really no dispute, I believe, of the length of the commitment should be three years, which is half of the maximum amount of time for the aggravated battery minus good time served. So there's no dispute on that. Initially, the trial court, in calculating the period of commitment, stated orally that it was 8-27-2011. But then they had the main hearing in August, I believe, August 31, 2010. And the lower court set the theme date, and I'm going to use theme date, which is the maximum the state can place Mr. Hughes in a secure setting pursuant to People v. Thief. And they accepted the state's position that this period of involuntary commitment should not start until at the end of his MSR period from the retail theft, which he was in Pontiac from. So the trial court accepted the state's position that his commitment should start in October 13, 2009. We're arguing that it should be probably at the very minimum at the end of his regular sentencing at DOC, which should have been one year earlier. And so that his theme date should have been October 13, 2011 instead of 2012. The first issue is whether this court has jurisdiction to hear this appeal. And I bring this matter up because the Supreme Court in Harrison said that NGRI equities don't have a right to appeal, except we're not appealing the acquittal itself, but the length of time for commitment. And the state has no objection on this issue of jurisdiction, but I wanted to raise it just to cover everything here. The primary issue, though, is that the trial court failed to provide Mr. Hughes with proper credit for his period of custody and therefore improperly calculated his theme date and the maximum period of involuntary commitment. I'm going to go over some basics here since there's not much case law precedent on this issue. Basically, ordering him being committed to October 2012 contradicts Mr. Hughes' constitutional rights, the code, and precedent with regards to this. Both parties, I can probably, reading the response from the state, agree that October 13, 2012 is the wrong date. So the issue is when should the commitment start, and should it run concurrently or consecutively with his MSR, the mandatory supervised release. And the procedure normally, after a person is found not guilty by reason of insanity, is covered by 5-2-4b, is that it governs the commitment, and basically it says the maximum period of involuntary commitment is for the most serious crime and not to extend the maximum length if convicted. So you can't be committed longer than if you were actually guilty of the crime. So basically, the courts provide credit for good behavior, and the purpose of the statute is to prevent indeterminate institutionalization and to minimize intrusion on the liberty interest because basically my client's been found not guilty, he's been acquitted. And the other purpose of the statute, the commitment, is to allow for the treatment of the mental illness and to protect the individuals and society from potential dangerousness. So this section does not really define the beginning of the period of commitment. But there is a first district case called Youngerman, where they said that the plain and ordinary meaning of period of commitment should not include time when the party is not in custody. And this was a case where this gentleman escaped from Alton Mental Health Center and they got back into custody. And they used the analogy of crediting a criminal defendant for time served in custody prior to sentencing, including periods he spent in custody prior to sentencing as credit toward this commitment period. So here, not giving him credit during this MS, starting the commitment one year at the end of the sentence is not providing him with any credit during that one year after the sentence. And as I understand the state's argument, they say the time should start to run when he was committed to DHS's custody. And in this case that would be a good result, but I don't want to blanket rule on that. And this is the reason why, adoption of that. Because let's say if someone just had no prior crime, committed a crime and was found NGRI, then they wouldn't have been, if we adopt the state's interpretation, then all the periods before he's in custody and DHS, while they determine that he's not guilty by reason of insanity, would not be credited toward his commitment time. So he would be treated worse than a person who would be found guilty. So let's say I commit a crime, it takes a year for them to establish I'm NGRI, they finally commit me, and normally it takes about a year, sometimes less, sometimes more. I would not be, if we adopted the state's position for not the day-to-day credit, I wouldn't be receiving any credit for the time I'm in the hospital or in custody before the date of the crime. That Youngerman case you cited says that the statute does two things, it allows for the treatment of the guy's mental illness and it protects the individual and society from his potential dangerousness. Well, the three-year period is the period here, but he's not going to be treated for three years, right? No, he's going to be treated during those three years, but I mean, the period before you're found NGRI, you're in treatment if you're in DHS. He was in DHS in April, but sometimes people are in county jail. There's a five-month period where he receives no treatment. So five months out of that three years, no treatment is provided, the period from October to April. Right, but he's still in confinement, in custody, we don't know the reason why the MSR was. There's no difference between DOC and DHS? I think the timetable runs at the end of his confinement in custody, and then it should start the period for this confinement that he's alleged for. So the fact that he doesn't get three years of treatment, so what? Well, I think if he's, and I understand your concern on this, but if he's dangerous at the end of that period of time, the state can file a petition to continue to commit them. So they're not just released. At the end of, let's say in October here, the state still finds him mentally ill, they can file a petition for continued commitment, and that's through the civil process. The switch though is on, during this period of time, besides the initial commitment, so during this theme date period of time, the state can only commit a person if they're currently dangerous. And the person, after the initial commitment, my client has the burden of proof that he's no longer dangerous. After this theme date period of time, if the state commits someone, or files a petition, then they have the burden of proof. Saying that he's not dangerous, so the burden of proof switch, so there is a difference on that point. I'm so entwined in this, I hope I'm conveying my basic point on this. But basically, the statute says that they cannot be held beyond the maximum period of someone found guilty. So if you start the period, let's say five months later, and not give that five months credit, you're holding them longer than if a person was found guilty with good behavior. So basically my argument is starting the commitment period a year later is really incongruous with both the statute and precedent. And there's cases where I'm starting to do more of these appeals, where let's say your prison term ends 20 years later. Then does the commitment start at the end of that 20 years? And the statute seems to have an emphasis on the committee's current mental state, because the state has to prove that they're currently mentally ill. And that section also says there has to be a current evaluation within 30 days of the acquittal. The section is silent whether a commitment should run concurrently or consecutively with one another. So this is the issue whether there's two separate crimes on two separate days, whether that sentence should be concurrently or consecutively. Now the statute says it does not allow concurrent commitments if one is acquitted of multiple crimes, and it's only for the most serious crime for which he's been acquitted by reasonable insanity. So I guess if it's one court case and you commit a couple crimes, the statute is that it's a concurrent commitment. So you could be only, let's say I do burglary and another thing, it's the burglary, the most serious crime would be the length of the theme day. And basically if we do, if the court adopts a consecutive approach, it would really treat people who do, they're both mentally ill and you're treating people who are, by chance committed all crimes in one thing differently than if a person did crimes on several different charges for several different cases. And really, I'm not an expert in criminal law, but it seems like consecutive sentencing is more of a punishment issue. Where concurrent, and that really contradicts the rehabilitative purpose of commitment. So the commitment is not supposed to be a punishment. So if you do consecutively, you're committing someone way in the future. Here it's five months difference, or a year difference. And some people who are in Pontiac for a long time, their commitments aren't going to start until five or seven years later. And it's well known, of course, that involuntary commitment affects substantial liberty interests. And therefore, the Supreme Court has interpreted Section 5, the Section 2, in the favor of the acquittee. So they, it was one issue where there was an extension of probation in the Supreme Court. And they put it in favor of the acquittee. And there is one case, Hampton, where the First District rejected consecutive periods of NGRI commitments if the acquittee committed multiple crimes. And this also applies for the unfit to stand trial. In this case, the DOC could have, Mr. Hughes was transferred to DHS solely on this NGRI finding. There is a petition for DOC to transfer a person to DHS, but that's through a 5-385 petition, which DOC did not do. It's nothing in the record there. It's in the MSR statute to commit someone to DHS, but they don't have the power to do that. So he was in DHS solely because of this NGRI. If DOC had revoked his mandatory supervised release, they could have kept him there until the trial on the second charge, right? Right. The second charge for the parodies in DOC. Or what if they revoked his good time credit? Oh, you mean for the original charge? Well, I guess then the clock still ticks on his commitment. Because the commitment is supposed to be based on your current state. It's not a future punishment. Because the theme date commitment is based on your current evaluation, whether you're currently in danger. And you're currently mentally ill. So let's say they revoked his MSR or revoked his good time, added, let's say, two years, right? And then say, well, your commitment then starts two years from now. Who's saying that from two years from now, he'll be not dangerous? I'm just talking about the period of time he was in DOC after his first sentence expired. Before he was transferred to, where, Livingston? To DHS. And DOC could have kept him if they revoked his good time credit or terminated or revoked mandatory supervised release. But my point of position would be the ideal position that he would receive that five months credit toward his theme date. Because it should run concurrently, not consecutively. Because he's been acquitted of the crime. If he was never even charged with a crime, they could have revoked his good time credit and kept him. For that one year. I know this is kind of thorny. There's not much case law on this. But it is kind of clear that because of the rehabilitative, it's not an issue of punishment. Sorry, I'm rambling on here. It should be considered concurrently and not consecutively. And also adoption of the state's position ignores the day-to-day credit provided to criminal defendants. Before they're charged with a crime, they get credit, I mean, after they're charged, before they're convicted, they get credit in jail. If we adopt the state's position, the NGRI equities will not get credit while they're in state custody. Before the NGRI finding and the date of the commitment. And that's why we're arguing that the court should not adopt the state's position. That the period of custody should not start at the date of the commitment. But it should be given day-to-day credit for each day the person's in custody. Any questions? Thank you, counsel. May it please the court, counsel. State's position briefly is that, as the Youngerman Court said, period of commitment in its plain and ordinary meaning means period of commitment. And it doesn't start until somebody's committed. So that date, as far as I can tell from the record, was April 7, 2009, as I recall. So the so-called theme date, which has already been agreed to, is three years, would be April 7, 2012. All this stuff about pre-custody good time, MSR time, consecutive, concurrent, doesn't have anything to do with anything, as far as I can tell. If he didn't have the first offense, if he was just arrested on the second offense, and held in county jail for several months, and then found not guilty by reason of insanity, he'd get credit for that time since he was picked up, wouldn't he? I don't think so. Because he gets credit, he's not being treated, and he's not been committed. But he's being held. Well, you know, counsel keeps saying, well, you're treated worse than if you were convicted of a crime. Well, I think the original theme case talks about that. It's apples and oranges. The criminal code and all that doesn't apply to people who are committed. You're not convicted, you're not really punished, you can petition to get out. I think any time, I'm sure my opponent's more knowledgeable than I am about that, she says it's every six months, but the burden shifts after the first time. I mean, the criminal code is written in there as far as good time, but after commitment. Period of commitment means period of commitment. It doesn't mean period of pre-commitment, it doesn't mean period of pretrial custody, it doesn't mean time you spent in this jail, that jail, some other jail, it doesn't mean time spent on MSR, it means period of commitment. That's what Youngerman said. And how do you know they're committed? They're committed and they're receiving treatment. I don't know what happened to Mr. Hughes prior to being committed as far as this Chester, and they have a motion pending, I still can't figure it out. What I determined, which is not in the record, is that he kept getting violated at the door. They would release him, he would just sit there, and so he'd be violated. I guess their version is that somehow he was being held on this aggravated battery charge. I disagree with that. I don't think the record supports clearly either one of them. Section 5-2-4B says that the period of commitment shall not exceed the maximum length of time that the dependent would have been required to serve, lest credit for good behavior. In Section 5-4-1, and then that refers you to two other sections, which I may have brought, yeah, I did, that refers you to 5-3-6-3, and that talks about day-for-day good time after you're convicted in 180 days for meritorious service. Now there's a case floating around out there that says the judge doesn't have the power to give the 180 days. That's only up to DHS, but I'm not here to argue that. That wasn't an issue at the trial level. But the maximum time of commitment to somebody who's been found guilty, not guilty by reason of insanity, is the period of time he could have been sentenced to if he'd been convicted of the offense, right? Yes. And if he'd been convicted of the offense, he would have gotten credit for the time he was held in custody before he was sentenced. I don't think that's true, Judge, with all due respect. I think you have to go look at 5-3-6-3, and I don't see that anywhere in there. It talks about 180 days and day-for-day good time of the sentence. So you think a guy can be arrested, be held in jail for a year, and then sentenced to the maximum sentence of three years, and he does the three years after he's done the one year that he was held in custody? No, not in a criminal offense. No, sir. No, of course not. Okay. So we know what the rule is in a criminal offense. That's an apple, and I'm talking about oranges. And the statute says, the NGRI period of commitment shall not exceed the maximum length of time that the defendant would have been required to serve on a criminal offense. Well, actually, Your Honor, it says, as provided in Section 5-4-1 of the Unified Code of Corrections. So I think in the original theme case it talks about, they brought an equal protection argument and some other arguments saying, you're treating me worse than you would a guy that was convicted of a crime, and the court, in my language, says, hey, hey, this is apples and oranges. You know, it's not the same thing. And simply stated, the care of younger men, we're just saying, hey, commitment doesn't start until he's committed. And in this case, as far as I can tell, it was April 7th. Now, I'm disagreeing with the trial court. I've admitted that, conceded the jurisdiction issue. I've conceded the trial court was wrong about picking this October date. But you've come up with another argument since. Well, I got it from them. It was their alternative argument.  None of this stuff makes any sense. The parties were given two chances by the trial judge to provide research, and they couldn't do it. I think the judge just snatched something out of the air which was inapplicable. And so I got this idea from my opponent. That was their alternative argument. I said, hey, this is the only thing that makes any sense. Period of commitment. Younger men, period of commitment means what it says. It starts when the guy's committed. When else would it start? And all these arguments about, oh, well, you know, this guy possibly could be treated worse than a guy that actually was convicted. Well, apples and oranges. You can get out. She says you can only file every six months. I don't dispute that. But you can get out. You can say, I'm restored to sanity. I want out now. I want an independent examination. So it's not the same thing. I don't know. I have trouble getting around that language. Such period of commitment shall not exceed the maximum length of time that the defendant would have been required to serve. It sounds to me like they are equating apples and oranges in that statute. According to you, Youngerman's wrong because you have to have treatment. No, Youngerman. He's sitting in the county jail. I thought Youngerman. What's the whole point of this act is to treat these people so they can regain their mental health. If they're sitting in a county jail. Youngerman said defendant was entitled to credit for the time he spent in custody before the. That was after a commitment, Your Honor. That was after a commitment. He's committed. He's there a couple years. He runs away. He's gone for four years. He turns himself in. He petitions to get out. The state responds with a petition to extend his theme date. But all that occurred after he was committed. Any questions? You made a reference. You said it's not in the record. But I think I understood you to say this. You think there was some effort by DOC to release or to transfer him and he perhaps because of his mental illness didn't want to comply, didn't want to leave the facility. It's called violation at the door. I never heard of it. But we don't know what a violation at the door is. You don't leave. You sit there. They say go. You're free to go. And he just sits there. I'm saying that because they're raising this specter. My opponent I don't think is in any way deceitful at all. The trial lawyer is raising up this specter of well, this guy was free to go and the only reason they held him at all was because of this pending aggravated battery. I don't think that's true at all. And I don't think it's supported by the record. So even if Judge Cook for the sake of argument is correct, I don't think the record supports the fact that supposedly this guy was the only reason he's in the DOC is because of this pending aggravated battery case. I don't think that's true at all. That's not what I discovered. And these documents that they have asked the record to be supplemented with, I don't think show that either. I mean, the first page shows he was convicted of discharge out of Cook County, but when you go to the second, third page, I can't decipher it at all. I can't make out the date. I can't make out what happened. It appears to be a docket sheet handwritten by somebody. I don't know what it's supposed to show. It doesn't show that he was held arbitrarily in DOC because of this pending aggravated battery charge or that he was violated on his MSR because of the aggravated battery charge. So if Justice Cook is right, I say the record doesn't support it. Thank you. Ms. Goldman? Just a couple points to clarify on this. The issue is normally if, let's say, someone, Joe Doe, commits a crime, is seriously mentally ill, the jail, as soon as they can, gets a court order to transfer them to DHS and the forensic unit because they don't want them in jail or DOC if they're that mentally ill. And this is before there's a finding of an NGRI or a finding of commitment. They're already being treated for the most part in the hospital setting in DHS. So before there's the commitment order, the person's already being treated, oftentimes to make them fit to stand trial or to stabilize them too. So just for clarification, that's usually the standard procedure. So the person's usually – this is an odd case because it's – And was that the situation in Youngerman? Youngerman was a little bit different. He was – I believe he was transferred to DHS. Then he somehow escaped from there, went to Washington State, voluntarily submitted himself. And they said the days he was in jail in Washington State, he was in state custody. So we're going to calculate that day-to-day custody. There's two other cases I would like to point out to the court. One is Hampton, which is the first district in 1984. And they said the defendant is committed to the department – and this was – these are both dicta, so it's not – but it said the defendant is committed to the department for an indefinite period, not to exceed 11 days from his arrest date. So in that one, they calculated his theme period of commitment from the date of the arrest. Also in PASKEWSKI, defendant was provided – and that's a Supreme Court case – defendant was provided day-for-day good time credit for time already served in determining his theme date. And basically, you know, there is no precedent that the equity gets less rights than a criminal defendant. And – or less time – you know, has to serve more time than a criminal defendant. And here we have equity, and if we accept the state's interpretation that they don't receive any credit for good time served before the commitment, they're going to be treated worse than a person who's actually been found guilty. What about his argument that we don't know why he was held in DOC? Before the trial? Right. And that's the issue – well, yeah, we don't – but the state – the courts have vowed he's going to be there for that year for the MSR violation. I mean, the trial court said, we're going to start his theme date at the end of his period of the MSR. No, I – why wasn't he transferred from DOC at the end of his first sentence? I think there was – if I'm correctly remembering the transcript, there was a mix-up in the order, and that's why there was a delay from February to April. I don't know why it wasn't done in October. I believe he was found NGRI in February. So he couldn't have done it earlier, because that was the NGRI date. Mr. Majors says that maybe there was a good reason to keep him in DOC. There could have been, but they put – then it should have been concurrently serving time. You know, he adds that – the trial court added that extra year, saying he's going to have one extra year in custody for the MSR. They didn't even get to the point whether he violated or not violated or whether DOC enacted it or not. He just – the trial court automatically added that one MSR period to – and started – actually, the troubling part is, he really started the theme date, his commitment date, in the future at the end of his MSR period date. So there's the two issues here, concurrently versus consecutively, and when – and should there be good time credit – commitment prior to the commitment for an innocent person in the state custody. But is there an explanation in the record for why he spent the period from October 13, 2008 to February 25, 2009, when he was found not guilty for reason of insanity? Why that time is spent in the Department of Corrections? No, there isn't, Your Honor. To the best of my recollection, there isn't. But you say it was a mix-up. There was a mix-up from February to April. He should have been, in February, sent to DHS right away. As soon as he was found not guilty for reason of insanity? Or within at least – But the question is, send him from where? Yeah. It's as if the process is puzzling, in the sense that DOC, one would assume, would be happy to usher him out the door. I mean, they talk about being crowded, and here's somebody who's got a release date of October 13. They may know that this criminal charge is pending, but I don't understand why they don't call Livingston County and say, come get this guy and decide what you want to do with him. And nobody does that. Or if they do, it doesn't happen. And then there's the additional mix-up, as you've suggested, from February to April. And there's the assumption that he would violate his MSR and have to spend an extra year in state custody for the MSR. So this is not the cleanest facts situation, but I hope I conveyed at least two points here. Okay. Thank you. Any questions? We'll take the matter under advisement. Thank you for your time.